**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| LORA J. MONTALTO, | : | Case No. 3:17-cv-82 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| | : | |
| NANCY A. BERRYHILL, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## DECISION AND ENTRY

---

### I.      Introduction

Plaintiff Lora J. Montalto brings this case challenging the Social Security

Administration's denial of her application for Supplemental Security Income.  She

applied for benefits on October 21, 2013, asserting that she could no longer work a

substantial paid job.  Administrative Law Judge (ALJ) Eric Anschuetz concluded that she

was not eligible for benefits because she is not under a "disability" as defined in the

Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #5), the

Commissioner's Memorandum in Opposition (Doc. #9), and the administrative record

(Doc. #4).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Anschuetz's non-disability decision.

## II.    Background

Plaintiff asserts that she has been under a "disability" since May 1, 2011. She was forty-three years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 416.963(c). She has a high school education. *See id.* § 416.964(b)(4).

### A.    Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Anschuetz that her "worst impairment" is the loss of use of her legs and her pain. (Doc. #4, *PageID* #68). She can only sit for a little while at a time and then it is difficult for her to stand up. *Id.* "Sometimes I will stand with assistance and just kind of up and down. I have very restless legs to I will move them around or - - I probably can't ride in a car more than a half an hour [sitting] in one position without maybe spending five minutes to regain composition. I will fall or just totally lose use of my legs after walking or standing." *Id.* at 68-69.

After she fell several times at work—once when carrying a ten-pound piece of metal—her employer terminated her because she was a "fall risk to their company." *Id.* at 62.

Plaintiff has pain in her back and neck because of degenerative discs. *Id.* at 83. She has pain when she is sitting, lying, walking, and standing. *Id.* at 84. "It can be a sharp pain. … I don't know if something moves and a nerve is pinched. … that is

excruciating pain for weeks … that cannot even be controlled, or there's nothing that can stop the pinched nerve pain." *Id.* At the time of the hearing, she had had three episodes that year that each lasted about a month. *Id.* Plaintiff also has fibromyalgia. *Id.* at 69.

She takes medication that she estimates helps thirty to forty percent. *Id.* at 71. She takes an anti-inflammatory, Mobic; Tylenol Arthritis twice a day; Ultram three times a day; and Lyrica three times a day. *Id.* at 72. She experiences several side effects including tiredness, shakiness, and upset stomach. *Id.* at 85.

She tried physical therapy in 2011 or 2012 but it caused her a lot of pain. *Id.* at 72. She continued to try the exercises at home. *Id.* When she moves her legs for half an hour, she is so sore and in so much pain that she lies in bed and cannot move for two days. *Id.* at 73. Plaintiff has used a cane on and off for between sixteen and eighteen months. *Id.*

Plaintiff has neuropathy in her wrists. *Id.* at 80. Her hands get cold and numb about three times a day and it lasts "anywhere from 20 minutes to over an hour." *Id.* at 81. When her hands are like that, she is not able to pick things up or hold on to them. *Id.* She also has pain at night and has to sleep with her hands in a certain position. *Id.* at 80. She had arm braces but she does not think that they help a lot. *Id.*

Plaintiff sometimes gets MRSA infections. *Id.* at 70. At the time of the hearing, she had not had a major one in nine months. *Id.* But in the past five years, she has had seven outbreaks that were bad enough to need treatment. *Id.*

Plaintiff has depression, anxiety, and memory problems. *Id.* at 74, 82. She has not gotten mental health treatment. *Id.* at 74. Her family doctor prescribes medication.

*Id.* at 82. Less than once a week, she has "really bad" panic attacks where her arms go numb or she feels like all the blood has rushed out of her body. *Id.* She also has "simple ones" when she is nervous because she has to be in a group of people or go to doctor's appointments. *Id.* at 82-83. She gets nervous, even if she has two appointments in one week, and she has to take medication for being nervous and panic attacks daily. *Id.* at 67.

Plaintiff lives in half of a house with her twelve-year-old daughter and fifteen-year-old son. *Id.* at 74. She has a driver's license but does not have a car. *Id.* at 75. Because of the pain in her legs and having to press on the gas pedal, she only drives short distances—less than fifteen miles. *Id.* Plaintiff explained that she has difficulties carrying in her groceries and sometimes cannot pick up an entire gallon of milk. *Id.* But, if she had to, she could probably pick up eight to ten pounds. *Id.* She can walk less than a block with her cane—"maybe 20 car lengths." *Id.* at 76.

Plaintiff usually goes to bed around 10:00 p.m. but is up every hour or two. *Id.* at 78. She wakes her children up at 7:00 a.m. and then usually goes back to bed. *Id.* She does not usually do household chores. *Id.* She "might do dishes every three days, or try to do dishes that [she's] used or as needed, but it's a lot of pain." *Id.* She cooks approximately once every three days and tries to make meals that last two days. *Id.* at 79. Her friend and daughter help with getting groceries and making dinner. *Id.*

### B. Medical Opinions

#### i. Amita Oza, M.D.

Dr. Oza evaluated Plaintiff on June 12, 2014. *Id.* at 568-74. She noted that Plaintiff has osteoarthritis in both knees—her right knee is worse than her left. *Id.* at 569.

She currently uses a cane and needs a total knee replacement.  *Id.* at 568-69.  Further,

Plaintiff reported that she has a history of meningitis that caused total deafness in her left

ear and problems with balance.  *Id.* at 568.  Her "[g]rip strength is strong, bilaterally

symmetrical.  Range of motion at wrists, elbows, and shoulders is full."  *Id.* at 569.  She

is obese and needs to lose weight.  *Id*.  Dr. Oza opined, "Work-related activities are

affected at this time due to her current impairment."  *Id.* at 570.  If she has to use stairs,

she is at risk of falling.  *Id*.

### ii.    Leon Hughes, M.D., & Teresita Cruz, M.D.

Dr. Hughes reviewed Plaintiff's records on February 10, 2014.  *Id.* at 104-17.  He

opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds

frequently.  *Id.* at 112.  She can stand and/or walk for six hours in an eight-hour day and

sit for six hours.  *Id*.  She can frequently stoop, and occasionally kneel, crouch, crawl, and

climb ramps, stairs, ladders, ropes, and scaffolds.  *Id.* at 113.  Dr. Hughes concluded that

Plaintiff is not under a disability.  *Id.* at 116.

On July 1, 2013, Dr. Cruz reviewed Plaintiff's records and found she had more

limitations than those Dr. Hughes identified.  *Id.* at 119-34.  Dr. Cruz opined she could

stand and/or walk for a total of four hours.  *Id.* at 129.  She can occasionally stoop and

push/pull with her right lower extremity.  *Id*.  She can never crouch, crawl, or climb

ladders, ropes, or scaffolds.  *Id*.  She must avoid all exposure to hazards such as

machinery and heights.  *Id.* at 130.

**III.** **Standard of Review**

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a

scintilla of evidence but less than a preponderance ….'" *Rogers*, 486 F.3d at 241

(citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal

criteria—may result in reversal even when the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647,

651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47

(6th Cir. 2004)).

## IV.    **The ALJ's Decision**

As noted previously, it fell to ALJ Anschuetz to evaluate the evidence connected

to Plaintiff's application for benefits.  He did so by considering each of the five

sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 416.920.

He reached the following main conclusions:

> Step 1:    Plaintiff has not engaged in substantial gainful employment since
> October 21, 2013.

> Step 2:    She has the severe impairments of obesity, bilateral osteoarthritis in
> knees, lumbar degenerative disc disease, depressive disorder, and
> anxiety disorder.

> Step 3:    She does not have an impairment or combination of impairments that
> meets or equals the severity of one in the Commissioner's Listing of
> Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

| Step 4: | Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "less than the [f]ull [r]ange of light work. [Plaintiff] can lift 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk a total of 4 hours in an 8-hour workday. She can sit for a total of 6 hours in an 8-hour workday. Due to osteoarthritis in her knees, which is worse on the right, she can only use her right foot to operate foot controls frequently. [Plaintiff] can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. She can occasionally balance, stoop, and kneel, but she can never crouch or crawl. [Plaintiff] must avoid workplace hazards, such as unprotected heights and unshielded rotating machinery. She must have the option to sit or stand at her workstation every 30 minutes. Due to mental health impairments, [Plaintiff] is limited to performing simple, routine, repetitive tasks, but not at a production rate. She can have occasional interaction with supervisors, coworkers, and the public." |
|---|---|
| Step 4: | She is unable to perform any of her past relevant work. |
| Step 5: | She could perform a significant number of jobs that exist in the national economy. |

(Doc. #4, *PageID* #s 35-47). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 46.

## V.   **Discussion**

Plaintiff contends that the ALJ failed to find that carpal tunnel was one of her severe impairments and failed to consider part of the vocational expert's testimony. The Commissioner maintains that the ALJ reasonably assessed Plaintiff's wrist impairment and properly accounted for her limitation in the hypothetical question to the vocational expert.

## A.     Step Two

At step two of the five-step sequential evaluation process, the ALJ considers the "medical severity of [the claimant's] impairments."  20 C.F.R. § 416.920(a)(4).  "An impairment or combination of impairments is not severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.921(a).  Basic work activities are defined as "abilities and aptitudes necessary to do most jobs."  *Id.* § 416.921(b).

> Examples of these include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*Id.*  If the claimant does not have an impairment or combination of impairments that are severe and meet the duration requirement,[1] then the claimant is not disabled.  *Id.*  The Social Security Administration requires the ALJ to consider symptom-related limitations and restrictions:

> If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe.

Soc. Sec. R. 96-3p, 1996 WL 374181, at *2 (Soc. Sec. Admin. July 2, 1996).

---

[1] "Unless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 416.909.

The Sixth Circuit has construed step two as a "*de minimis* hurdle." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted). The Court explained, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper vocational analysis." *Id.* (citations omitted). However, "the severity requirement may still be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir. 2001) (internal quotations and citations omitted).

In the present case, at Step Two, ALJ Anschuetz found Plaintiff has several severe impairments—obesity, bilateral osteoarthritis in knees, lumbar degenerative disc disease, depressive disorder, and anxiety disorder. (Doc. #4, *PageID* #37). Plaintiff contends, "The ALJ failed to cite carpal tunnel, or at the very least, neuropathy of wrists, as a severe impairment." (Doc. #5, *PageID* #897). And she is correct. Indeed, ALJ Anschuetz did not find that Plaintiff's carpal tunnel syndrome was severe or non-severe; he did not consider it at all at step two. Although she is correct that the medical evidence shows that she was diagnosed with carpal tunnel syndrome, she failed to establish that the condition is severe. "The mere diagnosis of [an impairment] … says nothing about the severity of the condition." *Higgs,* 880 F.2d at 863 (citing *cf. Foster v. Bowen,* 853 F.2d

483, 489 (6th Cir. 1988)). No physician indicated Plaintiff's ability to perform basic work activities was limited by her condition.

In addition, the Commissioner asserts that because the ALJ found some severe impairments, the "ALJ's failure to find additional severe impairments at step two does not constitute reversible error." (Doc. #9, *PageID* #912) (internal quotation marks and citations omitted). And, the Commissioner is partly correct. Generally, an ALJ does not commit reversible error by finding a non-severe impairment as long as: (1) the ALJ also found that the claimant has at least one severe impairment; and (2) the ALJ considered both the severe and non-severe impairments at the remaining steps in the sequential evaluation. *See Maziarz v. Sec'y of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk v. Astrue,* 253 F. App'x 580, 583 (6th Cir. 2007); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 577 (6th Cir. 2009); *Pompa v. Comm'r of Soc. Sec.,* 73 F. App'x 801, 803 (6th Cir. 2003) ("[O]nce the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps.").

Plaintiff asserts that the ALJ failed to meet the second condition—he did not consider her carpal tunnel syndrome at any of the remaining steps. She correctly points out that he only mentions that she testified that she has carpal tunnel syndrome, it causes numbness, and she drops things. *See* Doc. #4, *PageID* #s 40-41. The ALJ does observe the absence of symptoms, as observed by Dr. Oza, who noted that Plaintiff's "[g]rip strength is strong, bilaterally symmetrical. Range of motion at wrists, elbows, and shoulders is full." *Id.* at 44.

The record contains little concerning Plaintiff's carpal tunnel syndrome. In February 2010—before Plaintiff's alleged disability onset date—EMG and nerve conduction studies revealed "Bilateral median nerve compression neuropathy at the wrist consistent with carpal tunnel syndrome. The degree is moderate to severe on the left and moderately severe on the right. Nerve conduction abnormalities and her symptoms are worse in the left median distribution." *Id.* at 278.

A few years later, in September 2013, Plaintiff complained of numbness to Dr. Schear and he referred her for an EMG. *Id.* at 487-89. When she returned to his office in December 2013, she reported numbness again but had not gotten an EMG. *Id.* at 539-44. Dr. Schear referred her again. *Id.* But, at her appointments in April 2014 and June 2014, there was no mention of numbness. *Id.* at 548-57.

In November 2014 and February 2015, Plaintiff reported to Dr. Friedman that she had numbness in her hands and legs. *Id* at 588-99. Dr. Friedman noted, "Episodic paresthesias in the arms and legs. Prior EMG of the low back and legs suggested the possibility of mild lumbar radiculopathy." *Id.* at 593, 599. In August 2015, he indicated, "we reviewed her recent EMG results (8/4/15), which showed evidence of bilateral median neuropathies at the wrists (mild-moderate and somewhat worse on the left)." *Id.* at 582. Further, "Bilateral carpal tunnel syndrome although the possibility of a superimposed cervical radiculopathy also exists, based on her recent EMG and previous MRI cervical findings." *Id.* at 587.

Significantly, none of Plaintiff's physicians opined that she was limited by carpal tunnel syndrome. Given the lack of medical evidence establishing that Plaintiff was limited, any error the ALJ made in failing to address carpal tunnel syndrome is harmless.

Nonetheless, Plaintiff contends this failure by the ALJ is significant because, in response to "a hypothetical to the vocational expert that included the limitation of occasional use of hands including handling and fingering[,]" the vocational expert testified "that there would be no jobs available." (Doc. #5, *PageID* #900) (citing Doc. #4, *PageID* #98).

There are two major flaws in Plaintiff's argument. First, the ALJ found—and Plaintiff does not contest—that she could do less than a full range of light work. (Doc. #4, *PageID* #40). Plaintiff's hypothetical that included occasional use of hands also restricted her sedentary work. Second, the record does not establish that Plaintiff is limited to occasional use of her hands for handling and fingering. "The DOT defines 'occasionally' as an 'activity or condition exist[ing] up to 1/3 of the time.'" *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 791 n.5 (6th Cir. 2017) (citing DOT § 713.687-018, 1991 WL 679271; DOT § 521.687-086, 1991 WL 674226). Plaintiff testified that her hands are cold and numb three times a day for between twenty minutes and one hour. Even if the ALJ fully credited her testimony and assuming each of the three times lasted an entire hour and all occurred in the eight-hour period Plaintiff was at work, she could still use her hands occasionally.

Accordingly, Plaintiff's challenges to the ALJ's decision lack merit.

**IT IS THEREFORE ORDERED THAT**:

1.      The ALJ's non-disability decision is affirmed; and

2.      The case is terminated on the Court's docket.


Date: March 8, 2018                      *s/Sharon L. Ovington*
                                            Sharon L. Ovington
                                            United States Magistrate Judge